The Honorable John C. Coughenour

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

WOLFIRE GAMES, LLC et al.,

Plaintiffs,

v.

VALVE CORPORATION,

Defendant.

Case No. 2:23-mc-00037-JCC

**DEFENDANT VALVE CORPORATION'S OPPOSITION TO NEXON AMERICA, INC.'S MOTION TO QUASH SUBPOENA**

## I.     INTRODUCTION

Faced with claims that it has monopolized or attempted to monopolize an alleged PC games distribution market for the past 20 years, Valve served a subpoena on video game company Nexon America Inc. ("NAI"), the U.S.-based subsidiary of Japan-based global video game company Nexon Co., Ltd. Valve's subpoena seeks sales data and documents about markets and competition that Valve will use to defend against Plaintiffs' allegations that Valve has "monopolized" video game distribution through various restraints on competition. Valve's requests arise from Plaintiffs' allegations, are relevant and proportional to the needs of this case, and seek data that will assist Valve in determining the size of the relevant market over time, Valve's share of it, and documents showing the existence of robust competition contrary to Plaintiffs' allegations.

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 1

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

1    Since serving the subpoena, Valve made significant concessions to reach an

2    accommodation with NAI, proposing NAI would produce key sales information that relates to

3    its U.S. sales, and documents relevant to the competitive dynamics in the market in which NAI

4    participates. In response, NAI offered only to "produce" materials already publicly available on

5    its Japanese parent's investor relations website—materials that notably do *not* include data,

6    specific to the U.S. market, that Valve seeks from NAI—and U.S.-only sales data from 2020

7    and later.

8    In moving to quash Valve's subpoena, NAI has not shown that it would be unduly

9    burdened by compliance or that the subpoena seeks to compel disclosure of privileged

10   information. On the contrary, there is no evidence that NAI has engaged in serious efforts to

11   comply at all. The Court should accordingly deny NAI's Motion to Quash ("Motion") and

12   order it to promptly comply with the narrowed requests Valve set forth in the Joint Statement

13   filed on May 9, 2023 (Dkt. # 29) ("Joint Statement") and described below.

14   **II.      BACKGROUND**

15       **a.      Plaintiffs' Allegations Against Valve**

16   The litigation underlying the subpoena arises out of Plaintiffs' allegations of anticomp-

17   etitive conduct against Valve, which was founded in 1996 as a developer of video games.

18   Consolidated Second Amended Complaint ("Compl.") (Case no. 2:21-cv-00563-JCC, Dkt. #

19   127) ¶ 46. According to Plaintiffs' account, which Valve disputes, Valve has had a

20   "stranglehold on the PC gaming market" from 2004, shortly after Valve began distributing

21   games through its Steam platform. *Id.* ¶ 50. Plaintiffs also allege, but Valve denies, that Valve

22   is the world's largest distributor of PC games, holding approximately 75% of an alleged PC

23   video game distribution market. *See id.* ¶ 56; Answer to Compl. (Case no. 2:21-cv-00563-JCC,

24   Dkt. # 128) ¶ 56. Plaintiffs allege a class encompassing video game developers who sold a

25   game through Steam during the class period where either (1) the developer was based in the

26

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 2

United States or its territories or (2) the developer sold games through Steam to consumers in the United States. Compl. ¶ 375.

Plaintiffs' proposed class definition alleges a geographic market "*at least as broad* as the United States." Compl. ¶ 122 (emphasis added). This indistinct market definition means Plaintiffs seek a geographic market that is at a minimum the United States, but might be broader and potentially worldwide.

### b.    Valve's Requests to NAI

Valve's subpoena to NAI sought documents showing its sales volume of video games and associated downloadable content and in-game purchases, in dollars and units, worldwide and for the U.S. since 2003. *See* Breslauer Decl. Ex. A. The purpose for seeking game sales information is straightforward: Valve seeks to rebut Plaintiffs' allegation that Valve has "monopolized" game distribution for nearly 20 years, and to do so Valve seeks data on sales by significant game companies so it can determine the overall size of the market and Valve's share. Valve's subpoena also sought documents showing the competitive dynamics in the relevant market as NAI experiences and contributes to them. The purpose for seeking documents relating to competitive dynamics is similarly straightforward: Valve seeks to rebut Plaintiffs' allegation that Valve, by its conduct, has somehow been able to operate free of competition for nearly two decades.

### c.    NAI's Response to Valve's Requests

NAI objected to Valve's requests that, as a U.S. subsidiary in the global Nexon organization, it could not be compelled to produce non-U.S. data that lie beyond NAI's possession, custody, or control. *See* NAI Objections at 9-11, Dkt. #2 at Exhibit B. But mainly NAI objected to the subpoena in its entirety as unduly burdensome, and coupled its objections with a demand that Valve "unconditionally withdraw the subpoena" within a week or it would move to quash. *See* NAI Feb. 6, 2023 Letter to counsel for Valve, Dkt. #2 at Exhibit C. Valve immediately sought to meet and confer over the objections and NAI's withdrawal demand, but

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 3

NAI nevertheless moved to quash the subpoena in the Central District of California on February 21, 2023, four weeks after service when it served its objections. *See* Dkt. #3.

### d.   Transfer to the Western District

On February 24, 2023, Magistrate Judge Michael R. Wilner of the Central District of California scheduled a video status conference for March 3, 2023 to consider whether "Nexon and Valve may be better served by transferring this quashal action" to this Court. *See* Order at 1 (Dkt. # 5). NAI and Valve continued their discussions for two months in an effort to resolve the dispute. On April 24, 2023, Magistrate Judge Wilner held a status conference, in which he ruled that NAI's motion should be transferred to this Court.

### e.   Discovery Requests in Dispute and the Parties' Positions

In the Joint Statement filed on May 9, 2023, Valve and NAI set out the narrowed set of discovery requests Valve made to NAI on March 22, 2023 and NAI's position as to what it would produce in response. Dkt. # 39 at 1-3. The requests in dispute represent 13 of the 27 requests in Valve's subpoena,[1] and each seeks information Valve needs to prepare its defense to Plaintiffs' allegations. Valve has already dropped 14 of its requests based on the meet-and-confer process, and as set forth below is prepared to drop more provided NAI makes certain representations.  As set out in the Joint Statement, NAI's offer does not address most of what Valve seeks and the Court should accordingly order NAI to comply with the requests as set out below.

| Request 1 | Valve requests that NAI produce the Software sales revenue and unit sales data Request 1 seeks on an annual basis from 2003 to the present, separately for PCs, consoles, and mobile devices, and separately for games, DLC and in-game purchases (collectively referred to as "Software" below and also defined in the subpoena) it sold. Valve requests production of these data in two geographic groups:  (i) sales to purchasers in the U.S., and (ii) sales to purchasers in the rest of the world. |
|---|---|

Request 1 seeks information regarding aggregated (total, not by individual title) annual

---

[1] The full subpoena is attached as Exhibit A to the Declaration of Peter Breslauer being filed herewith.

**FOX ROTHSCHILD LLP**
**1001 FOURTH AVENUE, SUITE 4400**
**SEATTLE, WA 98154**
**206.624.3600**

sales. Along with similar information from other major video game vendors, this information

will help Valve to determine the size of the relevant market worldwide and in the U.S., and

Valve's share thereof, key information Valve requires to rebut Plaintiffs' monopolization

allegations. The subpoena sought monthly sales but Valve compromised on annual sales to

reduce Nexon's burden. For worldwide numbers, Nexon pointed Valve to publicly available

documents from 2011 forward on its parent company's investor relations website.[2] Those

publicly available materials do not break out NAI's (or Nexon Co. Ltd.'s) U.S. sales, which

Valve needs to be able to address a U.S.-only market consistent with Plaintiffs' allegation of a

geographic market that "is *at least as broad* as the United States."

Valve is willing to accept aggregated annual U.S. sales data from 2011 forward, but that

is not part of NAI's offer in the Joint Statement. On May 16, NAI offered to produce sales and

unit data it has for 2011 and later, but on May 18 stated that it only has U.S.-only data from

2020 and later. Valve suggested on May 18 that NAI might be able to identify U.S. sales by

looking at state or national sales tax or address information stored by NAI or its payment

servicer, and NAI said it would continue to try.

Valve respectfully requests that NAI be ordered (1) to use reasonable efforts to identify

and produce annual U.S.-only sales and unit data from 2011 to 2022, responsive to Request 1,

and (2) to provide a declaration attesting that no more than 1% of its revenues are derived from

acting as a distributor of Software produced by companies outside the global Nexon

organization, as its counsel has asserted.

| Request 2 | Valve requests annual Software sales revenue from 2003 to the present that NAI received for Software it caused to be distributed on a distribution platform not operated or under its control. |
|-----------|---|

---

[2] NAI's parent was first publicly listed in 2011. Breslauer Decl. Ex. F at 2. The investor relations materials are on https://ir.nexon.co.jp/en/library/result.html at the "Quarterly Earnings" subpage.

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 5

| | Valve requests annual revenue share from 2003 to the present that NAI received for sales of Software reported in response to Request 1 above. |
|---|---|

Valve needs this data about Nexon's sales on platforms other than its own for the same reasons it needs responses to Request 1—to show that Steam competes with other platforms in a competitive market. If NAI confirms its counsel's statement that it earns no more than 1% of its revenue from publishing others' Software, Valve will drop the second paragraph of Request 2, above. Valve respectfully requests that the Court order NAI to produce annual aggregated sales revenue from 2011 to 2022 per the first paragraph.

| Request 10 | Documents sufficient to determine, separately by total unit Software sales and total sales revenues, the top five resellers to which NAI distributed Software for digital download from 2003 to the present, and the corresponding annual total unit sales and total sales revenues for each of those resellers. |
|---|---|

Valve needs these documents to show, along with information from others, competition among the largest Software distributors. NAI has not offered to produce them. The top five contributors by units and revenue should be identifiable in the data Nexon produces in response to Request 2. Valve respectfully requests that the Court order NAI to produce documents responsive to Request 10 for annual U.S. sales beginning in 2011.

| Request 11 | Documents sufficient to show the annual amount since 2003 paid to developers of Software for which NAI acted as publisher. |
|---|---|

Because NAI represented that substantially all of its revenue comes from Software it develops, Valve withdraws Request 11.

| Request 12 | Documents sufficient to show, from January 1, 2003 to the present, what companies and products NAI regarded as included in the markets that include distribution of games. |
|---|---|
| Request 13 | Documents sufficient to show, from January 1, 2003 to the present, whether NAI regarded Valve as a competitor to Nexon in sales of games, and whether it regarded Steam as a competitor to any Nexon distribution platform. |
| Request 16 | All documents that show, from January 1, 2003 to the present, NAI's or Steam's current or past market shares in markets that include Software distribution. |

NAI is the U.S.-based subsidiary of a major video game vendor with sales throughout

the world. Requests 12 and 13 seek documents showing what companies and products NAI

regards as competing in games and platforms, an important consideration in defining antitrust

markets. Request 16 seeks, for the same reasons, documents NAI may have regarding its and

Steam's market shares. Nexon has not offered to produce them. Valve respectfully requests that

the Court order NAI to produce documents responsive to Requests 12, 13, and 16 from 2011 to

2022.

| Request 18 | All documents discussing, describing, or analyzing competition in the market or markets that include distribution of games, including all such documents NAI produced in discovery or otherwise in *In re: Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.) and *Epic Games, Inc. v. Apple Inc.*, No.4:20-cv-05640-YGR (N.D. Cal.). |
|---|---|
| Request 19 | All documents NAI provided to, or received from, government entities or regulators about an investigation or review of antitrust or competition issues involving markets that may include the publishing or distribution of Software. |

In the Joint Statement, NAI offers to provide a declaration attesting that it does not have

any documents responsive to Request 18 and, as to the last five years, Request 19. If NAI

submits that declaration, Valve will drop Requests 18 and 19.

| Request 20 | All documents describing, referring, or relating to any policies or guidelines for pricing of Software on any NAI distribution platform, including any policies or guidelines for pricing of games on any NAI distribution platform that are also sold on other companies' storefronts. |
|---|---|

The Complaint alleges that Valve maintains and enforces price parity and a "Platform

Most Favored Nations" clause that limits companies' ability to set prices lower than their prices

on Steam. Valve seeks to rebut these allegations by showing how other video game vendors,

including NAI, price their Software. As shown by the Joint Statement, NAI has not offered to

produce anything responsive. Valve respectfully requests that the Court order NAI to produce

documents responsive to Request 20 from 2011 to 2022.

| Request 24 | All documents describing, referring, or relating to features and functionality for cross-play between games offered on any NAI distribution platform and any other platform, including Steam. |
|---|---|

Cross-play is simultaneous play of a multiplayer game where the players are on different gaming hardware, as where a player who bought a game on Steam for a PC plays with someone using a console or mobile device. Cross-play is a valuable feature of multiplayer gaming, including to Nexon. *See, e.g.*, Breslauer Decl. Ex. B. Evidence of cross-play bears on the relevant product market. As shown by the Joint Statement, NAI has not offered to produce anything responsive to Request 24. Valve respectfully requests that the Court order NAI to produce documents responsive to Request 24 for 2011 to 2022.

| Request 26 | Documents relating to *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.) or other lawsuits |
|---|---|
| Request 27 | Documents and communications between NAI and Plaintiffs' counsel |

In the spirit of compromise, Valve withdraws Requests 26 and 27.

### f.    LCR 37(a)(1) Certification

As detailed in the accompanying Declaration of Peter Breslauer, Valve certifies pursuant to LCR 37(a) that the parties conferred in good faith by meeting and conferring by videoconference eleven times between February 8 and May 18, 2023, in good-faith efforts to reach a compromise and avoid burdening the Court with motion practice, but were unable to resolve the dispute. Breslauer Decl. ¶ 3 The Declaration also provides additional background on those efforts, which continued after the filing of the Joint Statement on May 9, 2023. *Id.* ¶¶ 5–10.

## III.    LEGAL STANDARD

A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The issues to be considered in evaluating the proportionality of a discovery request are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 8

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

1  its likely benefit." *Id.* District courts are vested with broad discretion in making discovery

2  rulings. *See Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980); *see also*

3  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

4        While district courts are bound to modify or quash a subpoena that subjects the

5  recipient to undue burden, the Ninth Circuit has declined to establish a lower standard for

6  undue burden when a subpoena is directed to a non-party. *See Mount Hope Church v. Bash*

7  *Back!*, 705 F.3d 418, 427, 429 (9th Cir. 2012) ("we will not read 'undue burden' differently

8  just because a non-party was subpoenaed"). The party moving to quash a subpoena, NAI here,

9  bears the burden of persuasion. *See Rollins v. Traylor Bros.*, No. C14-1414-JCC, 2017 WL

10  1756576, at \*1 (W.D. Wash. May 5, 2017).

11      **IV.**    **ARGUMENT**

12          **a.**    **The Subpoena Does Not Impose an Undue Burden on NAI**

13        NAI's undue burden argument boils down to an objection that Valve requested a large

14  amount of information. But that information is reasonably related to the issues in this case and

15  is the kind of information a large company in the video game industry is likely to have

16  accessible. The fact that NAI regarded Valve's requests as "extensive" is not a proper basis for

17  finding Valve's subpoena unduly burdensome. *See F.D.I.C. v. Garner*, 126 F.3d 1138, 1146

18  (9th Cir. 1997) ("Although the FDIC's requests are extensive, we cannot hold that the

19  subpoenas are overbroad or unduly burdensome absent a showing by Appellants of additional

20  support for this position."). Valve's requests set out in the Joint Statement, scaled back

21  considerably from the subpoena in response to discussions with NAI's counsel, are reasonable

22  and not "enormously expensive and burdensome."

23          **i.**  **The documents sought are proportional to the needs of the case**

24            **1.**  **Valve's subpoena is not temporally overbroad**

25        Though, as NAI notes, the Sherman Act and the Washington Consumer Protection Act

26  have four-year statutes of limitations, information about the market long before then is

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 9

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

important to rebut Plaintiffs' allegations that Valve somehow obtained market power in 2004, almost from Steam's inception. According to Plaintiffs, Valve took its first steps towards market consolidation in 2001 when it allegedly acquired the World Opponent Network, and achieved and exercised market power in 2004 when it "forced" consumers to download Steam in order to play Valve's successful Half-Life 2 game. Compl. ¶¶ 47-50. While Valve denies these allegations, that is the time-scale in Plaintiffs' complaint, and Valve is not free to ignore it in favor of a shortened period of NAI's choosing. *See* Dkt. #2 at 11-14. Valve requires the documents it seeks from NAI to challenge Plaintiffs' allegations of the size of the U.S. market, Valve's share, and whether Plaintiffs' allegation defining a product market is legally viable. Valve's requests for NAI's sales data, as well as the documents set out in the requests listed in the Joint Statement, are all focused on obtaining evidence to rebut Plaintiffs' allegations of monopolization since 2004. *See supra* section II.a.

In support of its argument that Valve's subpoena is temporally overbroad, NAI cites a single case, *In re Application of Pioneer Corporation*, No. MC 18-0037, 2018 WL 2146412 (C.D. Cal. May 9, 2018). *Pioneer*, however, did not involve the propriety of a subpoena under Rule 45. The issue in *Pioneer* was whether 28 U.S.C. § 1782(a)—a statute designed to help foreign companies obtain discovery in the U.S.—permitted a Japanese company to take discovery from a Delaware company for use in German litigation. The *Pioneer* court rejected the Japanese company's request on grounds that it failed to satisfy the statutory criteria for obtaining discovery in the United States. *See id.* at *5. *Pioneer* is inapposite here, where 28 U.S.C. § 1782(a) plays no part in this dispute between NAI and Valve. Moreover, Valve is not seeking 20 years of data from NAI; it has cut back the temporal scope of its requests from NAI to commence in 2011, the year when NAI's Japanese parent became a publicly held corporation. Breslauer Decl. Ex. F at 2. NAI has failed to carry its burden of showing that Valve's subpoena is unduly burdensome because it is temporally overbroad.

**Fox Rothschild LLP**
1001 Fourth Avenue, Suite 4400
Seattle, WA 98154
206.624.3600

## 2.  Valve's subpoena is not geographically overbroad

Valve has narrowed the scope of its requests to include only information about the U.S. market. NAI's arguments regarding the geographic scope of Valve's original subpoena are moot.

### b.    The documents sought are relevant to the case

NAI argues that the documents Valve seeks are irrelevant because "[t]here is no connection" between NAI's sales and Valve's alleged anticompetitive conduct. But Plaintiffs' core allegations, which Valve disputes, are that Valve monopolized at least the U.S., and possibly a broader, market for PC game distribution, and that its conduct has suppressed competition and forced publishers to sell software at artificially high prices. *See* Mot. Quash at 17. Information related to software sales on and off Steam is at the heart of this case, for purposes of rebutting Plaintiffs' allegations of monopolization, market definition, and restraint of competition.

Claiming that it is just "one of thousands of content publishers on Steam," Nexon neglects to mention that not all content publishers on Steam are equal in size. Plaintiffs allege that 96% of games on Steam are "indie" or "independent" games created by developers who lack the backing of a powerhouse organization like Nexon. *See* Consolidated Second Amended Complaint, Dkt. #127, ¶ 298. These leave only a few larger ones—allegedly 4%. Valve seeks discovery from NAI, one such large game studio, as the U.S. arm of an "industry leader" with significant data. Dkt. #2 at 2. NAI contends that Valve could obtain information from any number of other video game companies, and accordingly does not need NAI, which possesses no "unique" information, *id.* at 9, but this does not follow for two reasons. First, if everyone could escape a subpoena by arguing that a peer was as well positioned to respond, everyone would be able to escape the subpoena, leaving parties with no way to obtain information critical to resolving litigation. Second, NAI *does* possess unique information—it possesses unique information about its own sales, just as other video game companies possess unique

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 11

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

information about their businesses. No single source will do. To create a picture of the relevant market that is sufficiently detailed and accurate, Valve must compose a mosaic, gathering material from a variety of sources.

In its Motion, NAI asserted that Steam is the "primary" distribution channel for NAI's games, but as noted above, counsel for NAI refused to make any factual representations regarding his client's business. Breslauer Decl. Ex. C. Valve has no way of knowing what "primary" means. Dkt. #2 at 21. But even if Steam is where most of NAI's games are distributed, it would not be sufficient to relieve NAI of its obligation to comply with Valve's subpoena, as NAI has failed to specify which requested documents it believes are already in Valve's possession or what proportion of its business flows through Steam. *See F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) (enforcing subpoena over objection that information sought was already in party's possession because subpoena target "fail[ed] to provide specific information as to which document requests [were] duplicative.").

### c.   The Subpoena Does Not Seek to Compel Confidential Customer Information

Despite NAI's assertion to the contrary, Valve's subpoena does not seek "customer records," a "list of customers," or "customer identities" from NAI. Dkt. #2 at 22. Valve's document requests are directed at aggregated, deidentified data showing total sales by dollar amounts and units sold, and other business documents. To the extent that Valve's subpoena seeks information NAI considers commercially sensitive, the Stipulated Protective Order that the Court entered in this case and which Valve delivered to NAI along with its document requests is available to protect that information. *See* Protective Order, Dkt. # 95. As the Protective Order provides, NAI can mark any documents produced in response to Valve's subpoena as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL — ATTORNEY'S EYES ONLY" if they meet the Protective Order's criteria. *See id.* at 3.

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 12

1

        **d.**     **NAI is Not Entitled to Recover its Costs and Fees**

2

       The scope of permissible sanctions under Rule 45 "should not be so broad as to chill or

3

deter the vigorous advocacy on which our civil justice system depends." *Mount Hope Church*

4

*v. Bash Back!*, 705 F.3d 418, 429–30 (9th Cir. 2012). NAI has not shown that Valve has

5

engaged in sanctionable conduct. Even if the Court were ultimately to grant NAI's Motion,

6

"[s]anctions for issuing a subpoena are in no way supported merely because a party advocated

7

a position in seeking discovery that lost in the end." *Id.* at 429.

8

**V.**     **CONCLUSION**

9

       Valve tailored its subpoena to seek important information a video game company is

10

likely to have. Valve sought to meet and confer to learn what information NAI actually has and

11

what it could reasonably produce. Valve narrowed its requests. But Nexon has not reciprocated.

12

Instead, it moved to quash. Valve respectfully requests that the Court deny NAI's Motion and

13

order it to produce documents, including data, responsive to the requests set out in the Joint

14

Statement and described above.

15

    ///

16

    ///

17

    ///

18

    ///

19

    ///

20

    ///

21

    ///

22

    ///

23

    ///

24

    ///

25

    ///

26

    ///

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600

1    DATED this 23rd day of May, 2023.

2                                              FOX ROTHSCHILD LLP

3

4                                              *s/ Gavin W. Skok*
                                               Gavin W. Skok, WSBA #29766
5                                              1001 Fourth Avenue, Suite 4400
                                               Seattle, WA 98154
6                                              Ph. 206-624-3600
                                               Fax 206-389-1708
7                                              Email:  gskok@foxrothschild.com

8                                              Peter Breslauer  (*pro hac vice* pending)
                                               MONTGOMERY MCCRACKEN WALKER
9                                                 & RHOADS LLP
                                               1735 Market Street, 21st Floor
10                                             Philadelphia, PA  19103-7505
                                               Ph. 215-772-1500
11                                             Fax 215-731-3733
                                               Email: pbreslauer@mmwr.com

12                                             *Attorneys for Defendant Valve Corporation*

13

14                            **CERTIFICATION**

15        I certify that this memorandum contains 4,087 words in compliance with the Local

16   Civil Rules.

17                                             *s/ Gavin W. Skok*

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I certify that I am a secretary at the law firm of Fox Rothschild LLP in Seattle,

Washington.  I am a U.S. citizen over the age of eighteen years and not a party to the within

cause.  On the date shown below, I caused to be served a true and correct copy of the foregoing

on counsel of record for all other parties to this action as indicated below:

| **Service List** | |
|---|---|
| Brantley Ian Pepperman<br>QUINN EMANUEL URQUHART AND<br>    SULLIVAN LLP<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, CA  90017<br>Ph. 213-443-3000<br>Fax: 213-443-3100<br>Email: brantleypepperman@quinnemanuel.com<br><br>*Attorneys for Plaintiffs* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |
| Jared L. Cherry<br>PCFB LLC<br>4001 South 700 East, Suite 500<br>Salt Lake City, UT 84107<br>Ph. 801-935-4932<br>Fax: 801-935-4936<br>Email: jared@pcfblaw.com<br><br>Michael W. Ellison<br>SMITH ELLISON APC<br>2151 Michelson Drive Suite 185<br>Irvine, CA 92612<br>Ph. 949-442-1500<br>Fax: 949-442-1515<br>Email: mellison@sehlaw.com<br><br>*Attorneys for Nexon America Inc.* | ☐ Via US Mail<br>☐ Via Messenger<br>☒ Via CM/ECF / Email<br>☐ Via over-night delivery |

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 15

1    I declare under penalty of perjury under the laws of the State of Washington that the

2    foregoing is true and correct.

3    EXECUTED this 23rd day of May, 2023, in Seattle, Washington.

4

5    _____

6    Courtney R. Brooks

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

OPPOSITION TO MOTION TO QUASH (2:23-MC-00037-JCC) - 16

**FOX ROTHSCHILD LLP**
1001 FOURTH AVENUE, SUITE 4400
SEATTLE, WA 98154
206.624.3600