# EXHIBIT A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In re: Valve Antitrust Litigation

*Plaintiff*

v.

*Defendant*

Civil Action No. 2:21-cv-00563-JCC

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Nexon America Inc.
c/o C T Corporation System, 330 N. Brand Blvd, Suite 700, Glendale, CA 91203

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A

| Place: Fox Rothschild LLP, Attn: Meeghan Tirtasaputra<br>10250 Constellation Boulevard, Suite 900<br>Los Angeles, CA 90067 | Date and Time:<br>02/20/2023 10:00 am |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 01/20/2023

*CLERK OF COURT*

_______________________
*Signature of Clerk or Deputy Clerk*

OR

/s/ Peter Breslauer
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Valve Corporation, who issues or requests this subpoena, are:

Peter Breslauer, Montgomery McCracken Walker & Rhoads LLP, 1735 Market Street, Philadelphia, PA 19103, 215-772-7271, pbreslauer@mmwr.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:21-cv-00563-JCC

**PROOF OF SERVICE**

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ______________ .

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

Print Save As... Add Attachment Reset

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

## INSTRUCTIONS AND DEFINITIONS

1. This Subpoena seeks production of documents in connection with *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.), in which a Consolidated Amended Class Action Complaint was filed on August 26, 2022 (Dkt. # 99).

2. If any portion of a document is responsive to any Document Request, the entire document must be produced.

3. All documents produced electronically are to include all available metadata fields, including but not limited to the date created and any custodian information.

4. These document requests are intended to cover all documents and things in your charge or possession as well as those subject to your custody or control, whether in your possession, at the office of your attorneys, or at any other place or in the possession of any other person or entity subject to your control.

5. If you cannot respond to any of the following Document Requests in full after exercising due diligence in attempting to secure the documents necessary to do so, respond to the fullest extent possible, producing all documents within your possession, custody, or control as of the date of your response to these Document Requests, and explain why you cannot respond in full and state the nature of the documents, and the information therein, that you cannot produce.

6. Unless otherwise specified, the period during which documents that are to be produced in response to these Document Requests were created is January 1, 2003 to the present.

7. If you claim any privilege, whether based on statute or otherwise, as a ground for not responding to a request or any portion thereof, set forth each and every fact and ground upon which the privilege is based, including all facts required under Fed. R. Civ. P. 45(e)(2)(A) sufficient for the Court to make a full determination whether the claim of privilege is valid.

8. If you claim that any document you produce contains a trade secret or other confidential research, development, or commercial information that should not be revealed or be revealed only in a specified way, produce the document subject to the procedures set forth in the

Stipulated Protective Order filed in this action on August 16, 2022 (Dkt. # 95), a copy of which is enclosed with this Subpoena.

9. The singular includes the plural, and the connectives "and" and "or" are to be construed disjunctively or conjunctively, so as to bring within the scope of your responses all information that might otherwise be construed as outside the scope of a request.

10. "Console" means a specialized computer other than a PC, either stationary or handheld, designed to play games. For purposes of this definition, "console" also includes Nintendo Switch.

11. "Develop" means to create a game.

12. "Distribution platform" means, without limitation, websites (*e.g.*, https://www.nexon.com/, https://store.steampowered.com/), streaming media providers, websites of game developers and publishers, launchers including Nexon Launcher, cloud-based game streaming services, and other facilities designed or operated for distribution of games via the Internet.

13. "DLC" and "downloadable content" mean supplemental content for a released game, distributed through the Internet, including through a distribution platform, by the game's publisher, developer, or another entity.

14. "Document" means all documents, electronically stored information, and things described in Fed. R. Civ. P. 34(a)(1).

15. "Game" means, without limitation, video games designed for operation, locally or while connected to a server, streaming media, or other electronic service, on personal computers, consoles, smartphones, or other electronic computing devices, whether in individual or multiplayer modes, and whether distributed over distribution platforms, by retail stores, online resellers, or by other means.

16. "In-game purchases" means goods and services purchased from inside a game, including points, credits, and other items that can be exchanged for goods or services.

17. “Mobile device” means a cellular telephone that includes additional software functions, such as email or Internet browsing capability.

18. “Nexon distribution platform” means a distribution platform that you own, operate or market for the distribution of Software.

19. “PC” and “personal computer” mean a computer equipped with a microprocessor designed for use by one person at a time, but does not mean other devices such as gaming consoles, tablets, and cellular telephones and smartphones. By way of example, “PC” includes Windows-based computers, Apple iMac and MacBook computers, Linux-based personal computers, and Chromebooks. For purposes of this definition, “PC” also includes Steam Deck.

20. “Person” shall be deemed to include, in the plural as well as singular, any natural person, firm, association, partnership, joint venture, corporation or other entity, unless the context otherwise indicates.

21. “Publish” means to market and distribute a game.

22. “Referring to or relating to” means pertaining to, referring to, relating to, alluding to, connected with, commenting on, regarding, comprising, discussing, showing, describing, mentioning, memorializing, analyzing, embodying, reflecting, constituting, or evidencing, in whole or in part.

23. “Software” means games, DLC, and in-game purchases.

24. “You” and “Nexon” mean Nexon America Inc. and each of its agents, representatives, employees, contractors, and any other person, predecessors, parent companies, subsidiaries, acquired companies, and businesses, partnerships, affiliates, and entities, of whatever kind, in which any of them has a business interest or which is subject to your control, including without limitation Nexon Co. Ltd., Nexon Corporation, NX Games Inc., and Nexon US Holding Inc.

## DOCUMENT REQUESTS

1. Documents sufficient to show, for each month from January 1, 2003 to the present, your total sales revenues and units sold for Software for PCs, consoles, and mobile devices. For purposes of responding to this Request,

   a. The sales revenue and unit sales data should be stated separately for games, DLC, and in-game purchases;

   b. The sales revenue and unit sales data should be stated separately for

      i. Software, not distributed through any Nexon distribution platform, that Nexon published but was developed by others;

      ii. Software, not distributed through any Nexon distribution platform, that Nexon developed but was published by others;

      iii. Software not distributed through any Nexon distribution platform, that Nexon both developed and published;

      iv. Software, distributed through any Nexon distribution platform, that Nexon published but was developed by others;

      v. Software, distributed through any Nexon distribution platform, that Nexon developed but was published by others;

      vi. Software, distributed through any Nexon distribution platform, that Nexon both developed and published; and

      vii. Software, distributed through any Nexon distribution platform, that was neither developed nor published by you.

   c. The sales revenue and unit sales data should be stated separately for PCs, consoles, and mobile devices;

   d. The sales revenue and unit sales data should separately reflect sales to US purchasers and sales to purchasers in the rest of the world;

   e. The sales revenue and unit sales data should include, separately and for each company, sales of Software by all parent companies or companies you acquired,

operated, or in which you had a business interest from January 1, 2003 to the present;

f. State, by month, whether the sales revenue data produced in response to this Request reflect wholesale prices, retail prices (*i.e.,* consumer prices), or some other measure. To the extent possible, please provide retail prices in responding to this Request; and

g. The sales revenue data should be net sales (gross sales less returns, less chargebacks from credit card companies, payment processors or others, less sales tax, and less value-added tax).

2. Documents sufficient to show, for each month from January 1, 2003 to the present for which you produce total sales revenue and unit sales data in response to Request no. 1:

a. The revenue you received or retained for Software not distributed through any Nexon distribution platform, including without limitation for Software offered on distribution platforms other than any Nexon distribution platform and Software sold in wholesale transactions for resale by others;

b. The revenue share (sometimes referred to as the "commission") you received for Software published by others and distributed through any Nexon distribution platform; and

c. The revenue you retained, net of payments to others, for Software published by you and distributed through any Nexon distribution platform.

3. Documents sufficient to show, for each month from January 1, 2003 to the present for which you produce total sales revenue and unit sales data in response to Request no. 1, the percentage of reported total sales revenues and units attributable to sales in physical packaging and to digital distribution of Software designed for operation on consoles.

4. Documents sufficient to show, for each month from January 1, 2003 to the present for which you produce total sales revenue and unit sales data in response to Request no. 1, the

percentage of reported total sales revenues and units attributable to sales in physical packaging and to digital distribution of Software designed for operation on PCs.

5. Documents sufficient to show the proportion of total sales revenues and units sold, described in the documents produced in response to Request no. 1, that were attributable to physical packaging of Software that contained codes or keys to enable downloading of the software in contrast to physical packaging that contained digital media, *e.g.*, CDs or DVDs.

6. Documents sufficient to show how, rather than providing digital media inside physical packaging, the provision of codes or keys for downloading and activation of games in physical packaging affected the revenues, costs, and margins of the Software sold by you.

7. Documents sufficient to show how, rather than providing digital media inside physical packaging, the online distribution of codes or keys for downloading and activation of games affected the revenues, costs, and margins of the Software sold by you.

8. Documents sufficient to show how the provision, at no charge to publishers, of codes or keys for downloading and activation of games affected the revenues, costs, and margins of the Software sold by you.

9. Documents sufficient to determine, separately by total unit sales and total sales revenues, the top five resellers to which you distributed Software in physical packaging, and the corresponding total unit sales and total sales revenues for each reseller so identified.

10. Documents sufficient to determine, separately by total unit sales and total sales revenues, the top five resellers to which you distributed Software for digital download, and the corresponding total unit sales and total sales revenues for each reseller so identified.

11. Documents sufficient to show for each month from January 1, 2003 to the present, the average amount of the total sales revenue that was received by developers of Software for which you acted as a publisher. For purposes of this Request, "developers" refers to persons who are not your employees or agents, and includes entities that are separately organized from you and not divisions or business units otherwise under your control.

12. Documents sufficient to show, from January 1, 2003 to the present, what companies and products you regard as included in the markets that include distribution of games.

13. Documents sufficient to show, from January 1, 2003 to the present, whether you regard Valve as a competitor to Nexon in sales of games, and whether you regard Steam as a competitor to any Nexon distribution platform.

14. All documents, from January 1, 2003 to the present, that list, compare, count, analyze, or describe one or more features of any Nexon distribution platform and Steam.

15. All documents, from January 1, 2003 to the present, that discuss your potential or actual adoption, on any Nexon distribution platform, of a feature of Steam or one similar to a feature of Steam.

16. All documents, from January 1, 2003 to the present, that calculate, discuss, compare, or describe the market share held by Nexon or Steam.

17. All documents, from January 1, 2003 to the present, that describe, report, or calculate the cost of (a) developing any Nexon distribution platform, (b) individual features you have added to any Nexon distribution platform since its launch, or (c) the profit margin you realized on Nexon distribution platforms each year since its launch.

18. All documents discussing, describing, or analyzing competition in the market or markets that include distribution of games, including all such documents you produced in discovery or otherwise in *In re: Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.) or *Epic Games, Inc. v. Apple Inc.*, No.4:20-cv-05640-YGR (N.D. Cal.).

19. All documents you provided to, or you received from, any state, federal, or international regulator, government entity, lobbyist, trade association, or consultant referring or relating to any investigation or review of antitrust, competition, or consumer protection issues, or proposed or existing regulation involving, Nexon, Steam, or any other developers, publishers, or distributors of Software.

20. All documents describing, referring, or relating to any policies or guidelines for pricing of Software on any Nexon distribution platform, including any policies or guidelines for

pricing of games on any Nexon distribution platform that are also sold on storefronts operated by other companies.

21. All documents describing, referring, or relating to your decision to launch any Nexon distribution platform.

22. All documents describing, referring, or relating to the ease, difficulty, expense, or barriers, if any, to creating or maintaining a distribution platform in competition with others.

23. All documents relating to the reasons you distributed (or decided not to distribute) games on other stores or distribution platforms, including Steam, instead of or in addition to Nexon distribution platforms, including the reasons you stopped releasing games on Steam or began doing so again (if you ever made such decisions).

24. All documents describing, referring, or relating to features and functionality for cross-play between games offered on any Nexon distribution platform and any other platform, including but not limited to Steam.

25. All documents describing, referring, or relating to customers of any Nexon distribution platform who are also customers of Steam, including all documents calculating, estimating, or discussing the numbers of such persons, including at specific times or during specific periods.

26. All documents describing, referring, or relating to *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.) or the lawsuits filed by Wolfire Games, LLC, Dark Catt Studios Holdings, Inc., and Dark Catt Studios Interactive LLC consolidated therein.

27. All documents and communications between you, or anyone employed by or representing you, and any employee or representative of, or attorney representing, Wolfire Games, LLC, Dark Catt Studios Holdings, Inc., or Dark Catt Studios Interactive LLC, including without limitation all documents and communications referring or relating to *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.) or the lawsuits filed by Wolfire Games, LLC, Dark Catt Studios Holdings, Inc., and Dark Catt Studios Interactive LLC consolidated therein, or the subject matter or allegations of these lawsuits.