# EXHIBIT D

## Breslauer, Peter

| | |
|---|---|
| **From:** | Breslauer, Peter |
| **Sent:** | Wednesday, March 22, 2023 6:43 PM |
| **To:** | Jared Cherry |
| **Cc:** | mellison@sehlaw.com; Tirtasaputra, Meeghan H.; Rizzo, Jessica |
| **Subject:** | RE: Wolfire Games v. Valve Corp., CACD Case No. 2:23-mc-00022-AB-MRW |

Jared,

This responds to your email of March 17, 2023, written *after* Valve confirmed on March 16 that it is willing to accept annual, not monthly, sales and unit data requested in the subpoena. This was a significant scaling-back of the data the subpoena requested. In its March 16 email, Valve explained, as it had previously, why it is seeking sales and units data beginning in 2003 and why such data are relevant to Valve's defenses to Plaintiffs' allegations regarding market power and Valve's conduct after it launched Steam in that year. Moreover, Valve narrowed the data requests despite your refusal to provide any information regarding the scope or content of data that is actually held or available to Nexon America, Inc. (hereinafter, together with and any entities subject to Nexon America, Inc.'s control, "NAI").

Indeed, you say in your March 17 email, sent eight weeks after Valve served the subpoena, that you "have no firsthand knowledge of Nexon's records, retention policies, or business relationships." Your unilateral demands and objections that Valve withdraw the subpoena, or cut back its scope, therefore appear to have been made without knowledge of what your client actually possesses or reasonably can identify and produce. Under those circumstances, your demands and objections are not well taken. Valve wants to continue to take reasonable steps to avoid imposing undue burden or expense on NAI, as Rule 45(d)(1) requires, but it is impossible to have a productive meet and confer without information from you about what responsive data and documents your client has or reasonably can identify and produce.

Notwithstanding the foregoing, Valve has already scaled back its data requests, which it sets out formally below. In addition, to avoid the impasse that your current refusal to meet and confer over the subpoena portends, Valve sets forth below a scaled-back request for non-data documents. Our research suggests that Nexon America, Inc. may not have commenced operations until 2006. If that is true, please replace 2003 with 2006 in the requests below.

Valve makes these narrowed requests as a good-faith effort to eliminate the need for judicial intervention to compel responses to the subpoena, and without waiver of any requests in the subpoena in the event this matter proceeds to court. You asked for a scaled-back set of requests to show to your client, and we are providing them now. Please present the requests below to NAI and determine the scope of responsive data and documents accessible to NAI. We are prepared to meet and confer promptly to resolve any issues that remain.

### Data Requests

As noted above, Valve has already explained why it requested the data sought by the subpoena, namely that those data, regarding the activity of a major participant in the gaming industry in which Valve competes, are highly relevant evidence to the complaint's claims that Steam has had market power since its release in 2003, has held market or monopoly power for many years, imposes a so-called most-favored-nations clause on publishers, and charges an allegedly supracompetitive revenue share. In addition the data requests, as well as the non-data requests set forth below, are proportional to the needs of this case, again because Plaintiffs allege that Valve engaged in anticompetitive conduct and held market power from the time Steam was released in 2003. Valve denies those allegations and requires evidence that they are false, and evidence of robust competition in the gaming industry, including evidence of the activity of companies such as NAI, is key to Valve's defense.

The scaled-back requests presented below are keyed to a subset of the requests in the original subpoena, and reflect Valve's good-faith effort to reduce the burden you have asserted the subpoena imposes on NAI.

**Request 1**

Valve requests that NAI produce the Software sales revenue and unit sales data Request 1 seeks on an annual basis from 2003 to the present, separately for PCs, consoles, and mobile devices, and separately for games, DLC and in-game purchases (collectively referred to as "Software" below and also defined in the subpoena) it sold. Valve requests production of these data in two geographic groups:  (i) sales to purchasers in the U.S., and (ii) sales to purchasers in the rest of the world.

Valve does not seek data at the level of individual sales transactions, and does not seek data at the level of aggregated sales of individual products. Rather, Valve seeks annual total revenue and total unit volumes for each category set out above, aggregated for all products within each category. Valve's request for annual totals is intended to make it easier for Nexon to provide the information.

To the extent NAI has sales revenue and unit data responsive to the categories set out in Request 1.b, Valve requests their production.

For the avoidance of doubt, Valve is requesting production of data in the possession, custody, or control of NAI as defined above.

Valve requests production of retail (*i.e.*, consumer) prices where possible, and asks that NAI specify if the prices reflect wholesale or retail prices or some other measure. Valve asks that the sales revenue data be net sales as described in Request 1.g of the subpoena (after deducting returns, chargebacks, and taxes).

**Request 2**

Valve requests annual Software sales revenue from 2003 to the present that NAI received for Software it caused to be distributed on a distribution platform not operated or under its control.

Valve requests annual revenue share from 2003 to the present that NAI received for sales of Software reported in response to Request 1 above.

**Non-Data Requests**

Each of the requests below seeks relevant evidence regarding the nature and extent of competition in the market or markets for Software in which NAI and Valve participate, which Valve needs to defend against Plaintiff's allegations that Valve has had market power in online Software distribution since 2003.

**Request 10**

Documents sufficient to determine, separately by total unit Software sales and total sales revenues, the top five resellers to which NAI distributed Software for digital download from 2003 to the present, and the corresponding annual total unit sales and total sales revenues for each of those resellers.

**Request 11**

Documents sufficient to show the annual amount since 2003 paid to developers of Software for which NAI acted as publisher. For purposes of this Request, "developers" means persons who are not NAI's employees or agents, and includes entities that are separately organized from NAI and not divisions or business units otherwise under NAI's control.

**Request 12**

Documents sufficient to show, from January 1, 2003 to the present, what companies and products NAI regarded as included in the markets that include distribution of games.

**Request 13**

Documents sufficient to show, from January 1, 2003 to the present, whether NAI regarded Valve as a competitor to Nexon in sales of games, and whether it regarded Steam as a competitor to any Nexon distribution platform.

**Request 16**

All documents that show, from January 1, 2003 to the present, NAI's or Steam's current or past market shares in markets that include Software distribution.

**Request 18**

All documents discussing, describing, or analyzing competition in the market or markets that include distribution of games, including all such documents NAI produced in discovery or otherwise in *In re: Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD (N.D. Cal.) and *Epic Games, Inc. v. Apple Inc.*, No.4:20-cv-05640-YGR (N.D. Cal.).

**Request 19**

All documents NAI provided to, or received from, government entities or regulators about an investigation or review of antitrust or competition issues involving markets that may include the publishing or distribution of Software.

**Request 20**

All documents describing, referring, or relating to any policies or guidelines for pricing of Software on any NAI distribution platform, including any policies or guidelines for pricing of games on any NAI distribution platform that are also sold on other companies' storefronts .

**Request 24**

All documents describing, referring, or relating to features and functionality for cross-play between games offered on any NAI distribution platform and any other platform, including Steam.

**Request 26**

All documents describing, referring, or relating to *In re Valve Antitrust Litigation*, No. 2:21-cv-00563-JCC (W.D. Wash.) or the lawsuits filed by Wolfire Games, LLC, Dark Catt Studios Holdings, Inc., and Dark Catt Studios Interactive LLC consolidated therein. Valve is willing to narrow this request so that it does not seek any documents eliminated by the narrowing of Request 27, below, or documents relating to NAI's strategy or response to Valve's or Plaintiffs' subpoenas.

**Request 27**

All documents and communications between NAI, or anyone employed by or representing NAI, and any employee or representative of, or attorney representing, Wolfire Games, LLC, Dark Catt Studios Holdings, Inc., or Dark Catt Studios Interactive LLC, before the date when Plaintiffs issued a subpoena to NAI pursuant to Plaintiffs' February 3, 2023 notice of their intent to do so.

We look forward to your response.

Peter

Peter Breslauer
Montgomery McCracken Walker & Rhoads LLP
1735 Market St., Fl. 21
Philadelphia, PA 19103-7505
Office:  (215) 772-7271
Cell:     (484) 904-6411
Fax:      (215) 731-3733

**From:** Jared Cherry <jared@pcfblaw.com>
**Sent:** Friday, March 17, 2023 3:11 PM
**To:** Breslauer, Peter <pbreslauer@mmwr.com>
**Cc:** mellison@sehlaw.com; Tirtasaputra, Meeghan H. <MTirtasaputra@foxrothschild.com>; Rizzo, Jessica <JRizzo@mmwr.com>
**Subject:** RE: Wolfire Games v. Valve Corp., CACD Case No. 2:23-mc-00022-AB-MRW

**CAUTION** External Email

Peter,

Please do not mischaracterize our discussions.  I have explicitly stated many times that I am not representing facts to you regarding Nexon's business and that I will not do so.  I have reiterated that I have no firsthand knowledge of Nexon's records, retention policies, or business relationships.  Further, as I stated during our last call, no provision of the Federal Rules of Civil Procedure entitle you to demand answers to propound a free-form list of questions and demand that Nexon answer them in connection with your subpoena.  If you identified any relevant rules or other authority that you believe entitles you to proceed in this way following our call, please identify it.  Otherwise, Nexon declines to make representations to you about the extensive list of items that you have requested.

Nexon has been requesting that you narrow the scope of the subpoena to what is necessary for your case for weeks.  You have consistently dodged those requests.  If you are unwilling to put in writing any proposal to narrow the scope of the subpoena, please just say so.

I would be happy to speak with you once you provide a written proposal addressing each request and stating: (1) the narrowing that Valve proposes, and (2) explaining how the narrowed request is related to the claims and defenses and proportional to the needs of the case. I need to forward a written proposal to Nexon so that they can evaluate it.  This is not an unreasonable request, and I am simply trying to ensure that I can accurately convey your prosal to Nexon.

Until you provide a written proposal, I respectfully decline your request for additional discussions.  As shown in our correspondence, we are coming away from those discussions with different views about what each side did or did not agree to do.

**Jared L. Cherry**

4001 South 700 East, Suite 500 | Salt Lake City, UT 84107
Phone: 801-935-4932 | Fax: 801-935-4936
jared@pcfblaw.com  |  pcfblaw.com

**From:** Breslauer, Peter <pbreslauer@mmwr.com>
**Sent:** Friday, March 17, 2023 12:50 PM
**To:** Jared Cherry <jared@pcfblaw.com>
**Cc:** mellison@sehlaw.com; Tirtasaputra, Meeghan H. <MTirtasaputra@foxrothschild.com>; Rizzo, Jessica <JRizzo@mmwr.com>
**Subject:** RE: Wolfire Games v. Valve Corp., CACD Case No. 2:23-mc-00022-AB-MRW

Jared,

Thanks for responding. Your proposed message is acceptable, and we will have our counsel in LA, Meeghan Tirtasaputra, email it to Judge Wilner.

Turning to the substance, we reiterate our requests, to which you had agreed, that you work with your client to identify the scope of available sales data responsive to the subpoena, as well as the persons and/or locations of responsive non-data documents. Valve has already narrowed the data request without such information. However, Valve needs to understand what documents are reasonably accessible to Nexon in order to narrow the non-data requests, rather than narrowing the requests in the dark. This is a normal part of a meet-and-confer process, and we will work diligently to reach a resolution of our differences. We propose that we meet around the middle of next week (Wednesday or Thursday) to hear about what Nexon has and discuss Valve's positions on the individual requests.

Peter

Peter Breslauer
Montgomery McCracken Walker & Rhoads LLP
1735 Market St., Fl. 21
Philadelphia, PA 19103-7505
Office:  (215) 772-7271
Cell:      (484) 904-6411
Fax:      (215) 731-3733


**From:** Jared Cherry <jared@pcfblaw.com>
**Sent:** Friday, March 17, 2023 2:15 PM
**To:** Breslauer, Peter <pbreslauer@mmwr.com>
**Cc:** mellison@sehlaw.com; Tirtasaputra, Meeghan H. <MTirtasaputra@foxrothschild.com>; Rizzo, Jessica <JRizzo@mmwr.com>
**Subject:** RE: Wolfire Games v. Valve Corp., CACD Case No. 2:23-mc-00022-AB-MRW



Peter,

I suggest that we send the following message to Judge Wilner:

>   Judge Wilner,

The parties continue to discuss the possibility of narrowing the scope of the subpoena but have not yet reached any agreement.  The parties request an additional 14 days to continue their discussions.  The parties propose providing another update to the Court on March 31, 2023.

On the substance, Nexon again renews its demand that Valve provide a written proposal addressing each request and stating: (1) the narrowing that Valve proposes, and (2) explaining how the narrowed request is related to the claims and defenses and proportional to the needs of the case.

**Jared L. Cherry**
PCFB ATTORNEYS AT LAW
4001 South 700 East, Suite 500 | Salt Lake City, UT 84107
Phone: 801-935-4932 | Fax: 801-935-4936
jared@pcfblaw.com | pcfblaw.com

---

**From:** Breslauer, Peter <pbreslauer@mmwr.com>
**Sent:** Friday, March 17, 2023 11:37 AM
**To:** Jared Cherry <jared@pcfblaw.com>
**Cc:** mellison@sehlaw.com; Tirtasaputra, Meeghan H. <MTirtasaputra@foxrothschild.com>; Rizzo, Jessica <JRizzo@mmwr.com>
**Subject:** RE: Wolfire Games v. Valve Corp., CACD Case No. 2:23-mc-00022-AB-MRW

Hi Jared,

I'm just checking in regarding the email I sent yesterday. As I noted at the end, Judge Wilner requested the joint status report by noon Pacific. We're happy to circulate a draft if we're in agreement that we will inform him we're making progress and don't see a need for judicial intervention.

Thanks.

Peter

Peter Breslauer
Montgomery McCracken Walker & Rhoads LLP
1735 Market St., Fl. 21
Philadelphia, PA 19103-7505
Office:  (215) 772-7271
Cell:     (484) 904-6411
Fax:      (215) 731-3733

---

**From:** Breslauer, Peter
**Sent:** Thursday, March 16, 2023 6:17 PM
**To:** Jared Cherry <jared@pcfblaw.com>
**Cc:** mellison@sehlaw.com; Tirtasaputra, Meeghan H. <MTirtasaputra@foxrothschild.com>; Rizzo, Jessica <JRizzo@mmwr.com>
**Subject:** RE: Wolfire Games v. Valve Corp., CACD Case No. 2:23-mc-00022-AB-MRW

Jared,

Thank you for meeting again yesterday to work toward resolving our differences over the subpoena.

Based on our previous meeting on March 9, we expected you to tell us yesterday how far back Nexon America has data responsive to Request 1 of the subpoena, and what data responsive to the subparts in Request 1 it has. We also expected you to confirm the distribution channels that Nexon America uses—you said on March 9 that you thought they were limited to direct distribution by Nexon America and sales on Steam, but needed to confirm this with Nexon. Finally, we expected, again based on our March 9 meeting, that you would take steps to identify likely custodians of documents responsive to the non-data requests. We were disappointed that you did not report progress on these topics on yesterday's call.

You asked on March 9 what Valve "really needs" of the data sought by the subpoena. I assure you that Valve has a genuine need for what we requested. But we understand the effort that locating and producing information entails and therefore narrowed the data requests. Specifically, we stated yesterday that we would be willing to accept annual data, from 2003 forward, in the form of total sales volume in dollars and units, divided by platform (PC, console, mobile). We did so because we assume that Nexon would be more likely to have compiled and retained annual data in the ordinary course of business and could produce it more easily than monthly data over that period. You appeared receptive to that proposal, so we were surprised when you voiced objections on grounds of relevance and usefulness to Valve's defense. As we explained, those data, regarding the activity of a major participant in the gaming industry in which Valve competes, are highly relevant evidence to the complaint's claims that Steam has had market power since its release in 2003, has held market or monopoly power for many years, imposes a so-called most-favored-nations clause on publishers, and charges an allegedly supracompetitive revenue share. Please let us know if Nexon has reasonably accessible annual data. If it does not, please tell us what reasonably accessible data Nexon has that will show total sales volume over time in dollars and units—divided by platform if that information is included in Nexon's data. That information should enable us to make good progress toward resolving the data issues.

Before yesterday's call, you asked us to provide a narrowed set of requests for the non-data documents, and we are working to do so. Likewise, in our March 9 call, we asked you to take steps to identify likely custodians of documents responsive to the non-data requests, but we do not know if you are working to do so. We believe we could expedite our discussions by focusing on and resolving the data requests, discussed above, now, and then turning to these non-data requests. If you can tell us when you will be able to let us know (i) if Nexon has annual sales data—or, if not, what sales data it has, (ii) what data it has that responds to the Request 1 subparts, and (iii) whether Nexon sells only directly to end-users and through Steam (as you thought), we can meet again on the data requests and will be ready to discuss the non-data requests, including how they might be narrowed, promptly thereafter.

We regard our data proposal as a good-faith effort to narrow the differences between the parties and a basis to report to Judge Wilner that we are making progress. We would be happy to draft a brief report to that effect for submission to the Court tomorrow, if you agree. Judge Wilner requested we email him by noon Pacific Time.

Peter

Peter Breslauer
Montgomery McCracken Walker & Rhoads LLP
1735 Market St., Fl. 21
Philadelphia, PA 19103-7505
Office:  (215) 772-7271
Cell:     (484) 904-6411
Fax:      (215) 731-3733